IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ARMANDO CARO-BONET AND IRIS SANTOS-DIAZ,<br><br>**Plaintiffs,**<br><br>**v.**<br><br>LOTUS MANAGEMENT, LLC, *et al.*,<br><br>**Defendants.** | **Civil No.** 15-2106 (FAB) |

**OPINION AND ORDER**[1]

BESOSA, District Judge.

Plaintiffs brought this action against six defendants alleging violations of sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Puerto Rico law. (Docket No. 1.)  Defendants Jorge E. Perez ("Perez") and Damaris Seguinot ("Seguinot") move to dismiss plaintiffs' section 1962(c) RICO claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and urge the Court to decline to exercise supplemental jurisdiction over the Puerto Rico law claim. (Docket No. 11.)  Plaintiffs oppose. (Docket No. 14.)  For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** defendants Perez's and Seguinot's motion.

---

[1] Taylor S. West, a second-year student at the Georgetown University Law Center, assisted in the preparation of this Opinion and Order.

# I. RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows the Court to dismiss a complaint when the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In resolving a motion to dismiss, the Court employs a two-step approach. First, the Court "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Second, the Court "take[s] the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[s] if they plausibly narrate a claim for relief." Id. The appropriate inquiry "in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" Rodriquez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 55 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569 n.14 (2007)).

# II. FACTUAL ALLEGATIONS IN THE COMPLAINT

In late January 2012, plaintiff Dr. Armando Caro-Bonet ("Caro") was invited by a friend to invest in the gold market. (Docket No. 1 at p. 2.) Caro invited plaintiff Iris Santos-Diaz ("Santos") to join the venture. Id. On February 8, 2012, plaintiffs discussed the venture with defendants Perez and

Seguinot. Id. During this conversation, plaintiffs were told that the investment was for a gold mining operation in Peru and that, for every kilogram of gold plaintiffs purchased, they would receive 8.3 percent interest on their principal investment each month for the first three months. Id. at p. 3. After the three months expired, each plaintiff would receive a kilogram of gold. Id. Plaintiffs were shown photographs and documents and were told of contacts that Perez and Seguinot had in Peru. Id. at p. 2. Based on that information and a guarantee on their principal investments, plaintiffs accepted the offer. Id. at p. 3.

On February 13, 2012, plaintiffs signed a memorandum of understanding and a promissory note with defendant Lotus Management LLC ("Lotus"). (Docket No. 1 at p. 3.) The promissory note indicated that each plaintiff paid a principal investment of $55,265.85. Id. Perez, acting as Lotus's representative, signed the two documents. Id.

Following the agreement, plaintiffs received two of the promised interest payments in March and April 2012. (Docket No. 1 at p. 3.) After the second payment, Perez contacted plaintiffs to solicit another gold purchase. Id. The second offer sought a principal investment of $217,454.96 from each plaintiff in exchange for four gold bars and monthly interest payments of ten percent. Id. at pp. 3-4. Plaintiffs accepted this offer on March 23, 2012, by signing a memorandum of understanding and a promissory note,

which were also signed by Seguinot, the president of defendant Livepad International Inc. ("Livepad"). Id. Perez was present at the signing. Id. at p. 4.

Plaintiffs stopped receiving interest payments from defendants. (Docket No. 1 at p. 4.) Plaintiffs called Perez to complain, and Perez assured them that their investments were safe. Id. Plaintiffs were then offered a new contract via phone and e-mail. Id. For this contract, defendant Carlos Ramirez ("Ramirez") personally guaranteed plaintiffs' previous investments and offered a forty-five percent dividend to be received by plaintiffs every ninety days. Id. The new agreement was signed on August 10, 2012, and would be in effect for one year. Id. Again, plaintiffs did not receive the promised payments or gold. Id.

Plaintiffs brought this suit against three individuals - Perez, Seguinot, and Ramirez - and three corporations - Lotus, Livepad, and RLI LLP ("RLI"). (Docket No. 1.)

### III.  DISCUSSION

**A.  Section 1962(c) RICO Claim**

RICO section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

Civil No. 15-2106 (FAB)                                                5

RICO section 1964(c) permits a "person injured in his business or property by reason of a violation of section 1962" to bring a civil RICO suit.  18 U.S.C. § 1964(c).  Thus, to state a section 1962(c) RICO civil claim, a plaintiff must allege:  (1) injury caused by (2) conduct, (3) of an enterprise, (4) through a pattern, (5) of racketeering activity.  See Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005).

>    1.   **Injury**

Fraudulently induced payments are sufficient to constitute an injury pursuant to RICO's requirement that the plaintiff be "injured in his . . . property," 18 U.S.C. § 1964(c).  See Allstate Ins. Co. v. Plambeck, 802 F.3d 665, 676 (5th Cir. 2015) (recognizing that payments made as a result of fraudulent inducement are injuries covered by RICO); City of New York v. Venkataram, 396 F. App'x 722, 724-25 (2d Cir. 2010) (same).

Here, in their motion to dismiss, Perez and Seguinot argue that plaintiffs did not suffer a cognizable RICO injury because their complaint rests "wholly . . . on a 'mere expectancy' of receiving additional funds."  (Docket No. 11 at p. 16.)  The Court disagrees.  The crux of plaintiffs' alleged injuries is not that defendants did not give them the promised interest payments, gold bars, and dividends.  Rather, plaintiffs' alleged injury is that defendants induced each of them to pay $272,720.81 by making factual misrepresentations and false promises.  See Docket No. 1 at

Civil No. 15-2106 (FAB)                                                      6

pp. 3-4. Plaintiffs' fraudulently induced payments are a recognized RICO injury. See Allstate, 802 F.3d at 676; Venkataram, 396 F. App'x at 724-25. Accordingly, the Court rejects defendants' argument.

### 2. Conduct

RICO section 1962(c)'s "conduct" element requires that a defendant "conduct or participate, directly or indirectly, in the conduct" of the enterprise. 18 U.S.C. § 1962(c). The United States Supreme Court construed this element to mean that a defendant must "participate in the operation or management of the enterprise." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993). The Reves "operation or management" test requires that the defendant have only "*some part* in directing the enterprise's affairs." Id. at 179. After all, RICO was intended to "reach all who participate in the conduct of [the] enterprise, whether they are generals or foot soldiers." United States v. Oreto, 37 F.3d 739, 751 (1st Cir. 1994).

Here, defendants Perez and Seguinot contend that plaintiffs' complaint fails to allege their participation in the conduct of the enterprise sufficiently. (Docket No. 11 at p. 18.) The Court disagrees. Plaintiffs allege that Perez and Seguinot met with them in February 2012 to discuss the details of the investment opportunity. (Docket No. 1 at p. 2.) The meeting resulted in Perez and Seguinot entering into agreements with plaintiffs for the

Civil No. 15-2106 (FAB)                                              7

sale of gold.  Id. at pp. 3-4.  Specifically, Perez, acting as Lotus's representative, signed the first contract with plaintiffs.  Id. at p. 3.  Perez then contacted plaintiffs to propose another sale of gold.  Id.  Plaintiffs accepted Perez's offer and entered into a second agreement, which was signed by Seguinot, Livepad's president.  Id. at pp. 3-4.  These allegations indicate that Perez and Seguinot participated in the conduct of the enterprise by inducing plaintiffs to pay hundreds of thousands of dollars.  Perez and Seguinot's argument is therefore unpersuasive.

   **3.  Enterprise**

RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The United States Supreme Court interprets an "associated in fact enterprise" as one that has "at least three structural features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Boyle v. United States, 556 U.S. 938, 946 (2009).

Here, Perez and Seguinot argue in conclusory fashion that plaintiffs fail to plead the existence of an enterprise.  (Docket No. 11 at p. 18.)  The Court disagrees.  First, defendants had a common purpose of defrauding plaintiffs by inducing them into fraudulent contracts for the purchase of gold.  See Docket No. 1 at

Civil No. 15-2106 (FAB)                                                 8

pp. 3-4.  Second, defendants maintained a relationship in several ways.  For example, defendants Perez and Seguinot persuaded plaintiffs to enter into investment contracts with defendant corporations Lotus and Livepad.  Id. at pp. 2-4.  Perez and Seguinot signed those contracts on behalf of Lotus and Livepad, respectively.  Id.  Moreover, Ramirez entered into a contract with plaintiffs in which he personally guaranteed the payments and gold stipulated in the contracts plaintiffs had with Lotus and Livepad. Id. at p. 4.  These allegations suggest a working relationship among defendants.[2]  Third, this relationship had longevity: defendants continued communications with plaintiffs for a period of seven months to induce plaintiffs into "investing" more money.  Id. at pp. 2-4.  Thus, plaintiffs sufficiently allege the existence of an enterprise.

### 4.  **Pattern**

To establish a "pattern," RICO requires a plaintiff to show that at least two acts of racketeering activity occurred within ten years of each other.  18 U.S.C. § 1961(5).  RICO provides that "racketeering activity" includes violations of the federal mail and wire fraud statutes.  18 U.S.C. § 1961(1)(B); see 18 U.S.C. §§ 1341, 1343.  RICO complaints that plead predicate acts

---

[2] Plaintiffs' complaint does not allege RLI's role in the RICO scheme beyond conclusory statements of RLI having, for example, "deprive[d] plaintiffs of hundred [sic] of thousands of dollars." (Docket No. 1 at p. 4.)

Civil No. 15-2106 (FAB)                                                9

of mail and wire fraud must comply with the heightened pleading standard outlined in Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). Feinstein v. Resolution Tr. Corp., 942 F.2d 34, 42 (1st Cir. 1991). Accordingly, the First Circuit Court of Appeals "prune[s]" RICO complaints to the predicate offense allegations that meet Rule 9(b)'s pleading standard *before* analyzing whether the complaints meets RICO's "pattern" prong. Giuliano, 399 F.3d at 389-99.

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s particularity requirement, a plaintiff must "go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud." Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 (1st Cir. 2006) (quoting N. Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 43 (1st Cir. 2001)). This heightened standard serves three primary purposes: (1) to put defendants on notice, (2) to prevent against "fishing expeditions" during discovery, and (3) to safeguard defendants' reputations from frivolous fraud claims. See New England Data Servs., Inc. v. Becher, 829 F.2d 286, 289 (1st Cir. 1987).

In applying these principles, courts require RICO plaintiffs who plead mail or wire fraud specifically to allege the

Civil No. 15-2106 (FAB)                                                  10

locations, dates, and senders of the mail or wire communications that perpetrated the fraud.  See Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997) (holding that the "bald assertion" that unspecified defendants used mail and wire communications to commit fraud does not meet Rule 9(b)'s pleading requirement); Ferrer v. Int'l Longshoremen's Ass'n (ILA) AFL-CIO, Civ. No. 08-1505, 2009 WL 1361953, at *5-6 (D.P.R. May 11, 2009) (Pieras, Jr., J.) (concluding that complaint stated mail fraud allegations with sufficient specificity by giving dates of when letters were received from specific defendants); Hernandez v. Ballesteros, 333 F. Supp. 2d 6, 11-12 (D.P.R. 2004) (Casellas, J.) (finding that factual allegations that allege only the content of mail and wire communications do not meet Rule 9(b)'s specificity threshold). Moreover, the mode of communication must be specified when alleging mail or wire fraud.  Davila Uviles v. RYS Int'l Corp., 443 F. Supp. 2d 233, 238 (D.P.R. 2006) (Garcia-Gregory, J.) (noting that failure to state the specific means of communication "leav[es] the Court to speculate as to whether it was by wire, mail, smoke signal, or carrier pigeon").

     Here, Perez and Seguinot argue that plaintiffs do "not allege the time, place, or content of any communication between any of the defendants and any of the plaintiffs."  (Docket No. 11 at p. 13.)  The Court agrees.  The allegation of mail and wire fraud

discussed with the most particularity in plaintiffs' complaint is the following:

> [Plaintiffs] were assured that the principal [that they] would invest was guaranteed. [Plaintiffs] decided to invest[,] and [on] February 13, 2012[,] they signed a Memorandum of Understanding (MOU) and Promissory Note with Lotus Management LLC (Lotus). Jorge E. Perez signed both as [a] representative of Lotus. The signature by Perez says Feb. 13, 2012. The MOU says 8.3% profit each month after the first 30 days. The Promissory Note states that defendants received $55,265.85 each from Caro and Santos, to be paid by May 13, 2012. There is an interest rate [of] 5% for [nonpayment], 10 days after due date. These communications were via U.S. Mail and wire, in violation of 18 U.S.C. §§ 1341, 1342[,] and 1343.

(Docket No. 1 at p. 3.) This allegation fails to fulfill Rule 9(b)'s pleading standard. Although the allegation discusses the content of the communications, it is devoid of any discussion about the locations of the communications. Additionally, although the allegation specifies the signature dates of the contracts, plaintiffs do not specify the dates of when specific communications took place or the mode in which those communications were transmitted. Plaintiffs' "bald assertion" that the communications were via mail and wire does not satisfy Rule 9(b). See Ahmed, 118 F.3d at 889. Other allegations of mail and wire fraud in the complaint are equally deficient.

Thus, the Court finds that plaintiffs do not plead the occurrence of predicate offenses of mail and wire fraud with sufficient particularity to meet Rule 9(b)'s threshold. Therefore,

Civil No. 15-2106 (FAB)                                                     12

the "pattern" prong of plaintiffs' RICO claim cannot be met.  See Giuliano, 399 F.3d at 389-99.

Although plaintiffs' "[f]ailure to plead predicate acts adequately is enough to sink [their] RICO claim," see Ahmed, 118 F.3d at 889, dismissal of a RICO claim on this ground should not occur automatically, Becher, 829 F.2d at 290.  Rather, the Court should determine "whether the claim as presented warrants the allowance of discovery," and if so, the Court should "provide an opportunity to amend the defective complaint."  Id.  Factors to consider in making this determination are:  (1) whether the plaintiff sets out "a general scheme to defraud," (2) whether the plaintiff's allegations "make it likely that the defendant used interstate mail or telecommunications facilities," and (3) whether "the specific information as to use is likely in the exclusive control of the defendant."  Id. at 290-91.  The third factor, whether the information needed for adequate pleading is in defendant's sole control, is the threshold inquiry.  Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 16 (1st Cir. 2000) ("[T]he underlying rationale for relaxation of [the] pleading requirements [is] that the needed information is likely to be in the exclusive control of the defendant."); Ahmed, 118 F.3d at 890 ("[Plaintiff] failed to supply specific allegations which would indicate that critical information was in the sole possession of the defendants, and hence that further discovery or the opportunity

to amend his complaint was warranted.")  In other words, the third Becher factor is *necessary* for a court to give a plaintiff an opportunity to amend a deficient complaint to adhere to Rule 9(b)'s pleading standard.  Boldt, 274 F.3d at 44 (noting that a plaintiff should be provided an opportunity to amend a defective complaint only if "the specific information as to use [of interstate mails and wires] is likely in the exclusive control of the defendant" (quoting Feinstein, 942 F.2d at 43)).

In Efron, the plaintiffs alleged that they received letters via mail that fraudulently induced them to make capital contributions.  223 F.3d at 14.  Those predicate acts were not sufficiently pled because they did not allege the dates or locations of the communications.  See id. at 16.  In affirming the district court's refusal to grant plaintiffs leave to amend their deficiently pled complaint, the First Circuit Court of Appeals reasoned that the information needed to meet Rule 9(b)'s standard was not in defendants' sole control because plaintiffs alleged that they were "defrauded by communications that were sent [directly] to them."  Id.

Here, like in Efron, plaintiffs allege that they were defrauded by communications that defendants sent directly to them.  See Docket No. 1 at pp. 2-4.  In fact, all of the predicate acts of mail and wire fraud alleged by plaintiffs involve communications sent from defendants to plaintiffs.  See id.  Thus, like the

complaint in <u>Efron</u>, plaintiffs' complaint does not suggest that any information needed to satisfy Rule 9(b)'s pleading standard is solely within defendants' possession.  Therefore, the Court will not grant plaintiffs leave to amend their defective complaint as to their RICO claims against Perez and Seguinot.  After all, "the application of the <u>Becher</u> second determination is neither automatic, nor of right, for every plaintiff."  <u>Ahmed</u>, 118 F.3d at 890.

Because plaintiffs do not plead sufficient predicate acts required to find RICO section 1962(c) civil liability, and because the Court will not permit plaintiffs to amend their deficient complaint in this regard, the Court **GRANTS** Perez and Seguinot's motion to dismiss plaintiffs' section 1962(c) claim.

**B.   Puerto Rico Law Claim**

Defendants Perez and Seguinot finally argue that, if plaintiffs' federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over plaintiffs' Puerto Rico law claim.  (Docket No. 11 at pp. 21-22.)  Although the Court granted Perez and Seguinot's motion to dismiss plaintiffs' RICO section 1962(c) claim, plaintiffs' RICO section 1962(d) claim remains to ground supplemental jurisdiction.[3]  Accordingly, the

---

[3] Defendants Perez and Seguinot did not specifically challenge plaintiffs' RICO section 1962(d) claim in their motion to dismiss.  <u>See</u> Docket No. 11.

Court **DENIES** defendants Perez and Seguinot's motion to dismiss plaintiffs' Puerto Rico law claim.

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Perez's and Seguinot's motion to dismiss plaintiffs' RICO section 1962(c) claim and **DENIES** Perez's and Seguinot's motion to dismiss plaintiffs' Puerto Rico law claim, (Docket No. 11). Plaintiffs' RICO section 1962(c) claim against defendants Perez and Seguinot is **DISMISSED WITH PREJUDICE**.[4]

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 5, 2016.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE

---

[4] This dismissal applies only to claims against defendants Perez and Seguinot; the remaining four defendants did not join the motion to dismiss. See Docket No. 11; Cepero-Rivera v. Fagundo, 414 F.3d 124, 130 (1st Cir. 2005) (noting that *sua sponte* Rule 12(b)(6) dismissals of claims against nonmoving defendants are generally regarded as erroneous). These claims also serve to ground plaintiffs' Puerto Rico law-claims.