# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

ARMANDO CARO-BONET AND
IRIS SANTOS-DIAZ,

    Plaintiffs,

    v.

LOTUS MANAGEMENT, LLC, et al.,

    Defendants.

CIVIL NO.: 15-2106 (MEL)

## OPINION AND ORDER

Dr. Armando Caro Bonet ("Caro") and Iris Santos Díaz (Santos) (collectively "Plaintiffs") filed a complaint on August 16, 2015, against Jorge E. Pérez ("Pérez"), Damaris Seguinot ("Seguinot"), Lotus Management LLC ("Lotus"), Livepad International Inc. ("Livepad"), Carlos J. Ramírez ("Ramírez"), and RLI LLP ("RLI") (collectively "Defendants"). ECF No. 1. Plaintiffs alleged that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") section 1962(c), 18 U.S.C. § 1962(c); RICO section 1962(d), 18 U.S.C. § 1926(d); the covenants of good faith and fair dealing under Article 1210 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 3375, and Puerto Rico law claims of fraud. All claims against co-defendants Lotus, Livepad, Ramírez, and RLI have been dismissed without prejudice. ECF Nos. 36; 67. Thus, the only two remaining defendants are Pérez and Seguinot (hereinafter "Defendants"). Moreover, Plaintiffs' RICO section 1962(c) claim was previously dismissed by the court. ECF No. 28.

Pending before the court is Defendants' motion for summary judgment. ECF Nos. 46. Defendants argue that Plaintiffs' RICO section 1962(d) claim should be dismissed as RICO section 1962(d) does not provide a cause of action on its own, Plaintiffs' have not established an enterprise as required by section 1962(d), and because Plaintiffs' signed a release and waiver of liability

agreement. Defendants argue that the court should then decline supplemental jurisdiction over Plaintiffs' Puerto Rico law claim. Alternatively, Defendants argue that Plaintiffs' Puerto Rico law claim should be dismissed as Plaintiffs' signed a release and waiver of liability agreement. Plaintiffs filed a response in opposition to Defendants' motion for summary judgment. ECF No. 55.[1]

## I. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For

---

[1] Plaintiffs' opposition sometimes refers to Livepad as "Livepad International, Inc." or "Livepad" and other times as "Lifepad National, Inc." See, e.g., ECF No. 55, ¶¶ 5, 17.

2

issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The plaintiff need not, however, "rely only on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

### B. Uncontested Material Facts[2]

José Martínez (Martínez), a friend and co-worker of Caro, told Caro that he knew somebody who was looking for investors for his business involving buying and trading gold. ECF No. 46-1, ¶ 2, 53. Martínez introduced Caro to Pérez. ECF No. 46-1, ¶ 3. The first time they met

---

[2] Plaintiffs accepted Defendants' statements of fact for paragraphs 1–3, 5–9, 11, 13–14, 16–23, 27–29, 37–40, 42–43, 49–51, 54, and 61. ECF No. 64, ¶ 1. As to Plaintiffs' additional statements of material facts (ECF No. 64, at 11–20), Defendants' never filed a reply. Therefore, those additional facts that were material and properly supported by Plaintiffs were deemed admitted.

3

was in early 2012 at a meeting introducing a business venture. ECF No. 46-1, ¶ 3. Santos attended this meeting as well. ECF No. 46-1, ¶ 17. At this meeting, Pérez did a presentation and explained that he had a franchise to some mines in Peru. ECF No. 64, at yyy.[3] Pérez showed pictures and documents from the Peruvian Government pertaining to mining. ECF No. 46-1, ¶ 5. Pérez stated that he needed to raise money to buy some machinery in order to refine gold that he would buy from local minors. ECF No.64, ¶ zzz. Once the gold was processed, it would be sold for a profit and the profits would be shared. ECF No. 64, ¶ Aaaa. Plaintiffs were offered a contract to "buy gold at market price" and then at the end of a certain period receive a percentage of the profit from that gold. ECF No. 64, ¶ Bbbb. No contracts were signed during this first meeting. ECF No. 46-1, ¶ 6. Nonetheless, after Caro and Santos discussed the information, they decided to consider the investment. ECF No. 46-1, ¶ 18.

At a second meeting that took place around February 2012, they were shown a physical kilogram of gold and a certificate of authenticity. ECF No. 46-1, ¶¶ 7, 19. A contract was also shown and explained to them, which they agreed to. ECF No. 46-1, ¶ 7.[4] They bought a kilogram of gold for $55,000 pursuant to a contract with Lotus. ECF No. 46-1, ¶¶ 7–8, 19–20. They would be paid 8.3% a month for 3 months and they would get the physical kilogram of gold at the end of the contract. ECF No. 46-1, ¶ 8. Pérez was authorized to conduct business for Lotus but he did not own the company. ECF No. 64, at ¶¶ nn, bbb.

Caro received the first and second payment installments for approximately $5,000 each. ECF No. 46-1, ¶ 9. After this, Caro decided to invest in gold a second time and bought four

---

[3] Plaintiffs' labeled the paragraphs in their additional statements of materials facts with letters rather than numbers. ECF No. 64, at 11–20
[4] Neither Plaintiffs nor Defendants make it clear whether Caro and Santos signed separate contracts and whether they invested together or separately. Nonetheless, Caro's deposition makes it clear that the plaintiffs signed separate agreements. ECF No. 46-2, at 29:3–7.

kilograms for $217,000. ECF Nos. 46-1, ¶ 10; 64, ¶ 3[5]; 46-2, at 24:14–25.[6] This contract, which was subscribed with Livepad, would pay ten percent a month for twelve months and then they would get the four kilograms at the end of the twelve months. ECF Nos. 46-1, ¶ 10; 64, ¶ 3; 46-2, at 26:9–21, 27:14–17. Santos also signed a second contract for the purchase of four kilograms of gold with Livepad. ECF No. 46-1, ¶ 21. Livepad was created by Pérez and Seguinot, and they had control over Livepad. ECF Nos. 64, at ¶¶ uu, ww, xx; 46-4, at 151.[7] The second contract had clauses stating that a third party could be used to help with the business. ECF No. 46-1, ¶ 11. The third party turned out to be Ramírez. ECF No. 46-1, ¶ 11.

After the second contract was executed, the Plaintiffs stopped receiving payments and agreed to sign a third contract. ECF Nos. 46-1, ¶ 23; 46-1, ¶ 12; 64, ¶ 3; 46-2, at 31:2–25. Each Plaintiff signed a third contract with Ramírez on August 10, 2012, in a form of a Memorandum of Understanding. ECF No. 46-1, ¶¶ 13, 24.[8] Under the new contracts, Ramírez was directly responsible for delivering the money. ECF Nos. 46-1, ¶ 23; 46-1, ¶ 12; 64, ¶ 3; 46-2, at 31:17–25. As part of this new contract, Caro and Santos would be paid a premium to compensate for the delay in the previous payments. ECF Nos. 46-1, ¶ 23; 46-1, ¶ 12; 64, ¶ 3; 46-2, at 31:17–25. On

---

[5] Plaintiffs' opposing statement of material facts has two paragraphs labeled as "3" on page 2. The first paragraph addresses Defendants' statement of material facts paragraph 10, while the other address Defendants' statement of material facts paragraph 12. ECF No. 64, at 2.

[6] Plaintiffs' denied the Defendants' statement of material facts' paragraph 10. ECF No. 64, ¶ 3. A majority of the facts presented by Plaintiffs' are in regards to the formation of Livepad International, LLC, and do not contradict Defendants' paragraph 10. However, Plaintiffs claim that they were approached by Pérez again and were offered additional gold to be purchased. ECF Nos. 64, ¶ 3; 46-2, at 24:14–25. This is supported by Caro's deposition testimony and while this does not directly contradict the fact presented by Defendants, it shows that it is disputed whether Plaintiffs initiated the second investment or if they were approached.

[7] Seguinot is Pérez's sister. ECF No. 46-1, ¶ 37. Seguinot started working with her brother in the gold business after he returned from a trip to Peru and had pictures of the machinery, places he had been, and the people he contacted. ECF No. 46-1, ¶ 38. Seguinot went to Peru three times and Pérez took her to the places he had shown her in the pictures. ECF No. 46-1, ¶ 40. They went to places where people would extract gold and to places that had the machinery to produce gold. ECF No. 46-1, ¶ 40. Seguinot met Caro and Santos for the first time when the contracts were delivered to them around March 2012. ECF No. 46-1, ¶ 42. They met again around August 2012 to deliver the release and waiver of liability agreement. ECF No. 46-1, ¶ 43.

[8] Plaintiffs did not respond to Defendant's statement of fact paragraph 24. As this paragraph was properly supported, it was deemed admitted. ECF No. 46-1, ¶ 24.

that same date, Ramírez subscribed promissory notes in favor of Caro and Santos in the amount of $259,611.25. ECF No. 46-1, ¶ 14; 46-1, ¶ 25; 64, ¶ 5; 46-11. As part of the new contracts, Caro and Santos each signed a "release and waiver of liability agreement." ECF Nos. 46-1, ¶ 15; 64, ¶ 4; 46-9; 46-1, ¶ 26; 64, ¶ 6; 46-12.[9] Pérez told Caro via telephone that if Ramírez did not pay, he would pay. ECF Nos. 46-1, ¶ 12; 64, ¶ 3; 46-2, at 34:23–35:4. Caro and Santos communicated with Ramírez by email on several occasions regarding the contract and payments. ECF No. 46-1, ¶ 27.

### C. RICO Section 1962(d) Claim

Plaintiffs originally brought a Rico section 1962(c) claim and a RICO section 1962(d) claim. Section 1962(c) states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Plaintiffs' 1962(c) claim was previously dismissed by the court, thus Plaintiffs' 1962(d) conspiracy claim is the only remaining federal claim. ECF No. 28. "Section 1962(d) serves to make unlawful conspiracies to violate section 1962(c)." Feinstein v. Resolution Tr. Corp., 942 F.2d 34, 41 (1st Cir. 1991).[10] In order "[t]o prove a RICO conspiracy, a plaintiff must show (1) the existence of an enterprise; (2) that each defendant knowingly joined the enterprise; and (3) that each defendant agreed to commit, or in fact committed, two or more predicate acts." Vázquez-Baldonado v. Domenech, 847 F. Supp. 2d 281, 286 (D.P.R. 2012), aff'd, 595 F. App'x 5 (1st Cir. 2015) (citing

---

[9] Plaintiffs denied this fact. ECF No. 64, ¶¶ 4, 6. Nonetheless, Plaintiffs do not offer conflicting evidence to show that they signed these forms. Rather, Plaintiffs argue against whether these forms release Lotus, Livepad, Pérez, and Seguinot from any and all claims related to these transactions. Plaintiffs argue that Ramírez was not present during the signing of the document, which came signed, and that Plaintiffs still have a claim as Pérez, Seguinot, and Ramírez conspired with each other to commit fraud. ECF No. 64, ¶ 3–4.
[10] RICO section 1962(d) states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

Feinstein v. Resolution Trust Corp., 942 F.2d 34, 41 (1st Cir.1991); United States v. Angiulo, 847 F.2d 956, 964 (1st Cir.1988), cert. denied, 488 U.S. 852 (1988)).[11]

Defendants' do not expressly challenge any of the elements necessary for a RICO conspiracy claim but only hint at challenging the "existence of an enterprise" element: "A conspiracy under RICO section 1962(d) requires the existence of a RICO enterprise. A RICO conspiracy claim cannot stand absent an allegation of the involvement of an enterprise." ECF No. 46, at 12. While these statements are accurate, Defendants' do not provide any analysis and do not cite to any case law to establish how an "enterprise" is defined by the courts. Plaintiffs on the other hand, while also not citing to case law, state that:

> Defendants have used Livepad, Lotus and RLI LLP as an 'enterprise,' within the meaning of 18 U.S.C. § 1961(4), to carry out its pattern of racketeering activity. Defendants possessed and continue to possess a common purpose and goal, a membership, organizational structure, and ongoing relationships between them with sufficient longevity to permit and enable pursuit of the Enterprise's purpose and longterm objective through a continuous course of conduct that affected and continues to affect interstate and foreign commerce.

ECF No. 55, ¶ 9.

RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Thus, there are "two types of enterprises: legal entities and associations-in-fact." Libertad v. Welch, 53 F.3d 428, 441 (1st Cir. 1995) (citing United States v. Turkette, 452 U.S. 576, 580–581 (1981)). "The enterprise is an entity, a group of persons associated for a common purpose of engaging in a course of conduct." Id. An enterprise "is proved

---

[11] As to the third element, the Supreme Court has stated that "[i]t makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense." Salinas v. United States, 522 U.S. 52, 65 (1997). Rather, "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Id. at 65. Defendants have not expressly challenged this element in this case so it is not at issue.

7

by 'evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" Id. (quoting Turkette, 452 U.S. at 583).

Plaintiffs claim that Defendants used Livepad, Lotus, and RLI LLP as an enterprise. "[T]he First Circuit has held that the RICO 'enterprise' must be distinct from the 'person' (i.e., the defendant) who engages in the pattern of racketeering activity or collection of unlawful debt, since it is the 'person' and not the 'enterprise' who is potentially liable under RICO." Molina v. Unión Independiente Auténtica de la AAA, 555 F. Supp. 2d 284, 294 (D.P.R. 2008) (citing Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 448 (1st Cir.2000); Doyle v. Hasbro, Inc., 103 F.3d 186, 190–91 (1st Cir. 1996)). However, an enterprise does not need to "have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies." Boyle v. United States, 556 U.S. 938, 948 (2009).[12] Thus, the enterprise can be made up various groups and individuals. See Libertad, 53 F.3d at 442 ("To support the Appellants' RICO claim, the record must contain evidence that the Appellees—Rescue America, SLC, PLRT, and the individuals—constitute and operate as part of an association-in-fact enterprise. In other words, Appellants must show the existence of the enterprise, *of which* the Appellees were a part."). Therefore, an association-in-fact enterprise could be made of the original Defendants: Pérez, Seguinot, Lotus, Livepad, and Ramírez.

The Supreme Court has stated that based on the terms of RICO "it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to

---

[12] "Although *Boyle* dealt with a criminal RICO claim, '[i]t is appropriate to rely on [criminal] RICO precedent when analyzing [civil] RICO liability. The standard is the same for both criminal and civil RICO violations.... The RICO Act differentiates between criminal and civil liability by providing for criminal penalties in 18 U.S.C. § 1963, and civil remedies in 18 U.S.C. § 1964.'" Puerto Rico Am. Ins. Co. v. Burgos, 867 F. Supp. 2d 216, 228 n.11 (D.P.R. 2011) (quoting U.S. v. Shifman, 124 F.3d 31, 35 n. 1 (1st Cir. 1997)).

pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009). "[A]lthough much about the RICO statute is not clear, it is very clear that those who are 'associate[s],' . . . of a criminal enterprise must share a 'common purpose.'" Ryan v. Clemente, 901 F.2d 177, 180 (1st Cir. 1990) (citations omitted). The requirement "that members of an enterprise have a 'common purpose' limits the potentially boundless scope of the word 'enterprise;' it distinguishes culpable, from non-culpable, associations." Id. (citations omitted). Plaintiffs entered into contracts involving Pérez, Seguinot, Lotus, Livepad, and Ramírez. Thus, a reasonable jury could hold that the Defendants had a common purpose of defrauding Plaintiffs through various contracts in order to obtain money from them. Id. at 181 ("Of course, insofar as the complaint accuses the state defendants of sharing the enterprise's improper objective—making money—and of having furthered that objective, it sets forth a proper legal theory.").

Moreover, there are relationships among those in the enterprise in this case. Pérez lead the initial presentation on purchasing gold that Caro and Santos attended. The first contracts for the purchase of gold were between Plaintiffs and Lotus, and Pérez was authorized to conduct business for Lotus. The second contracts involving the purchase of gold were between Plaintiffs and Livepad. Livepad was created and controlled by Pérez and Seguinot. After the Plaintiffs stopped receiving payments, they were offered a third contract with Ramírez. As part of the third contract, and although the validity of the waiver of liability is in question, this waiver purported to waive liability for Pérez, Seguinot, Lotus, and Livepad. Thus, there are various relationships between those argued to be a part of the enterprise.

Lastly, there have been facts provided to show that there was a sufficient time frame to permit the Defendants to pursue the enterprise's argued purpose. Plaintiffs' signed the first contract in a meeting around February 2012, and the third contract was signed in August of 2012. This is

a large enough time frame for the Defendants to pursue a common purpose of obtaining money from the Plaintiffs through various fraudulent contracts for gold. Thus, there is enough evidence here to support a finding of an enterprise under Plaintiffs' cause of action under Rico section 1962(d).

Defendants' other argument seems to indicate that Plaintiffs' cannot bring a RICO conspiracy claim under section 1962(d) when their substantive RICO claim under section 1962(c) was previously dismissed.[13] Defendants assert that:

> [f]rom a perusal of the allegations of the Complaint, the dismissal of all allegations against defendants Carlos Ramírez and RLI, as well as the dismissal of all RICO section 1962(c) claims against appearing defendants, Plaintiffs' RICO section 1962(d) conspiracy claims against appearing defendants fell short. More than a matter of fact, it is a matter of law. RICO section 1962(d) does not provide a cause of action on [its] own . . . . This Honorable Court dismissed all RICO section 1962(c) claims against appear defendants. By the same token, all RICO section 1962(d) claims should be dismissed with prejudice against appearing defendants.

ECF No. 46, at 12. Defendants do not provide further analysis or elaborate on any case law to support this argument. Plaintiffs do not directly address this argument but state that "Plaintiffs have pled and shown with ample evidence that Lotus and Livepad are separate entities and are separate entities from defendants. Hence, Section 196[2](d) liability is shown here since there was a conspiracy pursuant to section 196[2](c). This is the reason Judge Besosa did not dismiss the complaint although the claims under section C were dismissed." ECF No. 55, ¶ 33. This is an inaccurate statement. The only comments made about Plaintiffs' section 1962(d) claim in the previous opinion was that Defendants did not specifically challenge this claim, and that this remaining federal claim grounded supplemental jurisdiction. ECF No. 28, at 14. However, in

---

[13] Defendants neglected to challenge Plaintiffs' RICO conspiracy claim in their previous motion to dismiss: "Defendants Perez and Seguinot did not specifically challenge plaintiffs' RICO section 1962(d) claim in their motion to dismiss." ECF No. 28, at 14 n.3. Thus, while Plaintiffs' RICO section 1962(c) was dismissed by the court, Plaintiffs' RICO section 1962(d) claim remained. ECF No. 28, at 14–15.

regards to the section 1962(c) claim, the court granted Defendants' motion to dismiss for failure to state a claim "[b]ecause plaintiffs did not plead sufficient predicate acts required to find RICO section 1962(c) civil liability." ECF No. 28, at 14.

"It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself." Salinas v. United States, 522 U.S. 52, 65, 118 S. Ct. 469, 477–78, 139 L. Ed. 2d 352 (1997) (Citing Callanan v. United States, 364 U.S. 587, 594 (1961)). However, in regards to RICO, the First Circuit has stated that:

> A conspiracy claim under section 1962(d) may survive a *factfinder's* conclusion that there is insufficient evidence to prove a RICO violation, *Howard v. America Online, Inc.,* 208 F.3d 741, 751 (9th Cir.2000), *cert. denied,* 121 S.Ct. 77 (2000), but if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails, *id.; see also Salinas v. United States,* 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense....").

Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 21 (1st Cir. 2000). In Efron, the First Circuit affirmed the lower court's decision to dismiss RICO section 1962(c) and section 1962(d) claims as the allegations in the complaint did not show RICO violations. Id. at 13; Efron v. Embassy Suites (Puerto Rico), Inc., 47 F. Supp. 2d 200, 210 (D.P.R. 1999), aff'd, 223 F.3d 12 (1st Cir. 2000) ("The Court grants Defendants' motions to dismiss due to plaintiff's lack of standing and failure to adequately plead a federal RICO violation."). Defendants cite to a Northern District of Ohio case, Miller v. Norfolk Southern Ry. Co., 183 F. Supp. 2d 996, 1002 (N.D. Ohio 2002), and state "[a] conspiracy claim under RICO could not be established when the substantive RICO claim was without merit." ECF No. 46, at 10. The court in that case granted a motion to dismiss for failure to state a claim under RICO when the complaint failed to allege an appropriate enterprise as required by RICO section 1962(c). Miller, 183 F. Supp. 2d at 1002. The court then held: "I

11

agree with defendants' argument that plaintiffs' conspiracy claim must fail because plaintiffs failed to state a claim under § 1962(c) . . . ." Id. at 1003.

The only substantive federal claim made by the Plaintiffs was their section 1962(c) claim. This claim was previously dismissed by the court because the pleadings did not state a claim upon which relief could be granted. Specifically, the court held that Plaintiffs failed to meet the heightened pleading standard outlined in Federal Rule of Civil Procedure 9(b), which must be complied with when a RICO complaint pleads predicate acts of mail and wire fraud. ECF No. 28, at 8–14. Thus, Plaintiffs' RICO section 1962(d) claim is dismissed as the pleadings do not state a substantive RICO claim upon which relief may be granted.

## II.    PUERTO RICO LAW CLAIM

Defendants argue that this court should decline supplemental jurisdiction over Plaintiffs' Puerto Rico law claim. However, Plaintiffs' complaint does not only allege federal question jurisdiction but also diversity jurisdiction: "This Honorable Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a). In addition, this [Honorable] Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 as there is total diversity between plaintiffs and defendants." ECF No. 1, ¶ 1. Defendants did not bring any arguments against Plaintiffs' claim of diversity jurisdiction. Diversity jurisdiction requires complete diversity between the parties and that "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332. The complaint alleges that Plaintiffs are "citizen[s] and resident[s]" of Puerto Rico, while Defendants are "resident[s] and citizen[s]" of Florida. ECF No. 1, ¶¶ 2–3, 5, 7. Moreover, the complaint alleges damages of $2,185,999.54. ECF No1, ¶ 34. Thus, diversity jurisdiction is valid in this case.

Defendants also argue that even if the court decides to exercise supplement jurisdiction, that "all causes of action under provisions of the Puerto Rico Civil Code should be dismissed" because "Plaintiffs have waived any claim they might have had against appearing defendants when on August 10, 2012, they subscribed a Release and Waiver of Liability Agreement in favor of appearing defendants . . . ." ECF No. 46, at 14. The agreements state that they were executed in Orlando, Florida, but do not indicate what law should be applied if a dispute arises. ECF Nos. 46-9; 46-12.

Plaintiffs do not respond to this argument, but argue that they may still have a claim, despite this release of lability, as Pérez, Seguinot, and Ramírez conspired with each other to commit fraud. ECF No. 64, ¶ 4. "Under Puerto Rico contract law, fraud that affects a contracting party is commonly referred to as 'dolo' or deceit, and can be manifested in one of two situations." Burk v. Paulen, 100 F. Supp. 3d 126, 134 (D.P.R. 2015) (citing Fournier v. Eastern Airlines, Inc., 655 F. Supp. 1037, 1038–39 (D.P.R.1987); Portugues–Santana v. Rekomdiv Int'l, 657 F.3d 56, 59–60 (1st Cir.2011)).[14] The first situation is "dolo in the formation of a contract," this "is essentially fraud in the inducement, which exists when a party is 'induced [by false statements] to execute a contract which ... he [otherwise] would not have made.'" Portugues-Santana, 657 F.3d at 62 (quoting P.R. Laws Ann. tit. 31, § 3408; also citing Lummus Co. v. Commw. Oil Ref. Co., 280 F.2d 915, 930 n.21 (1st Cir.1960)). A party that alleges this must "demonstrate: '(1) a false representation by the defendant; (2) the plaintiff's reasonable and foreseeable reliance thereon; (3)

---

[14] Nonetheless, dolo and fraud are not synonymous concepts. Burk, 100 F. Supp. 3d at 134 (citing Generadora De Electricidad Del Caribe, Inc. v. Foster Wheeler Corp., 92 F.Supp.2d 8, 19 (D.P.R.2000); Marquez v. Torres Campos, 111 D.P.R. 854, 11 P.R. Offic. Trans. 1085, 1096 (1982)). "Although the distinction is subtle, Puerto Rico's Supreme Court has described 'dolo' as the genus and fraud as one of several species alongside with deceit, false representations, undue influence, and other insidious machinations." Generadora De Electricidad Del Caribe, Inc. at 19 (citations omitted). Thus, "a fact pattern involving contract fraud will always involve 'dolo', but a fact pattern involving 'dolo' will not always involve fraud." Id.

injury to the plaintiff as a result of the reliance; and (4) an intent to defraud.'" Id. (quoting P.R. Electric Power Auth. v. Action Refund, 515 F.3d 57, 66 (1st Cir.2008) (citing 31 L.P.R. § 3408)).

"An agreement which wholly lacks the necessary consent due to 'substantial dolo' results in the nullity of the contract *ab initio* from its inception, whereas 'incidental dolo' merely gives rise to a claim for damages." Burk, 100 F. Supp. 3d at 134 (citations omitted); P.C.M.E. Commercial, S.E. v. Pace Membership Warehouse, Inc., 952 F. Supp. 84, 92 (D.P.R. 1997); P.R. Laws Ann. tit. 31, § 3409 ("In order that deceit may give rise to the nullity of a contract, it must be serious, and must not have been employed by both of the contracting parties. Incidental deceit renders the party who employed it liable to indemnify for losses and damages only. "). Here, if this release of liability was entered into in a deceitful or fraudulent manner, the contract could be nullified. The parties do not discuss the release and waiver of liability agreement and they do not go into the Puerto Rico law claims of fraud or the covenants of good faith and fair dealing. Therefore, Plaintiffs' Puerto Rico law claims are not dismissed at this juncture.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment (ECF No. 46) is GRANTED in part and DENIED in part. Plaintiffs' RICO section 1962(d) claim is DISMISSED WITH PREJUDICE. However, Plaintiffs' Puerto Rico law claim remains.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of July, 2018.

s/Marcos E. López  
U.S. Magistrate Judge